**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

KEVYN J. DAGA HURTADO,

                Petitioner,

    v.

ANGELA HOOVER,

                Respondents.

CIVIL ACTION NO. 3:26-CV-00419

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Kevyn J. Daga Hurtado ("Hurtado"), a Peruvian citizen and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On February 19, 2026, Hurtado filed the instant petition, requesting that Respondent Angela Hoover ("Hoover")[1] release him from custody at the Clinton County Correctional Facility in McElhatten, Pennsylvania or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). (Doc. 1, at 1). Hoover filed a response to Hurtado's petition on February 26, 2026. (Doc. 4). For the following reasons, Hurtado's petition (Doc. 1) is **GRANTED,** and Hoover is **ORDERED** to release Hurtado

---

[1] Hoover is the proper respondent in this case pursuant to the "immediate custodian rule" because Hurtado is detained at the Clinton County Correctional Facility. (Doc. 1, at 2); *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'"); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Hurtado on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

from custody.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following background and factual summary are derived from Hurtado's petition, Hoover's response, and the exhibits thereto. (Doc. 1; Doc. 4). Hurtado is a citizen of Peru, who has lived and worked in the Kearney, New Jersey since November 2023. (Doc. 1, at 9). Hurtado entered the United States on or about November 14, 2023, at or near San Luis Arizona without admission or parole. (Doc.1, at 9; Doc. 1-3). Hurtado subsequently encountered United States Border Patrol, who issued Hurtado a Notice to Appear and ICE reporting instructions, before releasing Hurtado on his own recognizance due to lack of space. (Doc. 4-3, at 3).

Since entering the United States, Hurtado has obtained work authorization and established ties in his local community. (Doc. 1, at 9). Hurtado has complied with the requirements of his immigration proceedings and conditions of release, and he has pursued the immigration and humanitarian relief available to him. (Doc. 1, at 9). Either on February 3 or February 10, 2026, Hurtado was taken into ICE custody while working in Pennsylvania. (Doc. 1, at 9; Doc. 4, at 4; Doc. 4-3, at 3). Department of Homeland Security ("DHS") records show that immigration officers conducted a vehicle stop and arrested Hurtado pursuant to an I-200 Warrant for Alien Arrest. (Doc. 4-3, at 3). DHS transferred Hurtado to the Williamsport sub office for processing and then transferred Hurtado to the Clinton County Correctional Facility, where he has been detained for approximately three weeks. (Doc. 1, at 10; Doc. 4, at 2). The Newark Immigration Court originally scheduled a master hearing for Hurtado on June 29, 2027 (Doc. 4-5); however, the Executive Office for Immigration Review's case information indicates that Hurtado now has a master hearing on March 3, 2026 through the

Elizabeth Immigration Court. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Feb. 27, 2026).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the

appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

**III.   JURISDICTION**

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner

also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Hurtado and whether Hurtado is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV.    DISCUSSION

Hurtado contends that his mandatory detention under § 1225(b)(2)(A) is both a violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 19-22). Hoover counters that Hurtado is subject to mandatory detention because he falls squarely under § 1225(b)(2)(A), which provides noncitizens only with the rights and protections set forth by Congress. (Doc. 4, at 16-17, 38-42). The Court will first address whether Hurtado was properly detained under § 1225(b)(2)(A). The Court will then address whether Hurtado's detention violates due process.

### A.  HURTADO WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B), WHEN HE SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

Hurtado was improperly detained under 8 U.S.C. § 1225(b), when he should have been detained under 8 U.S.C. § 1226(a). Hurtado avers that noncitizens who have lived in the United States for years before ICE apprehended them are not "seeking admission" and are not subject to detention under § 1225(b)(2)(A). (Doc. 1, at 15). Hoover counters that Hurtado is properly detained under § 1225(b)(2)(A) because the statute mandates the detention of noncitizens, like Hurtado, who are present in the United States without lawful admission. (Doc. 4, at 16).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto*, 2025 WL 2976572, at *5 (collecting cases). The parties dispute whether Hurtado is still "seeking admission" to the United States. (Doc. 1, at 15; Doc. 4, at 17-18).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL 2985150, at *16 n. 7; *J.A.M.*,

7

2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[2] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or

---

[2] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court, and the Court declines to follow it here.

immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at \*1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 27, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at \*2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at \*1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at \*14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at \*7 (collecting cases).

9

Section 1226(a), not § 1225(b)(2)(A), applies to Hurtado's detention. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto,* 2025 WL 2976572, at *5 (collecting cases). Hurtado has lived in the United States for over two years and is not actively attempting to come into the United States. (Doc. 1, at 9). Based on the plain meaning of the phrase "seeking admission," Hurtado sought admission when he entered the United States on November 14, 2023. (Doc. 1, at 9; Doc. 4, at 3; Doc. 4-2); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). A noncitizen, like Hurtado, who has established himself in the United States, making connections since his entry, is no longer at the "threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025). Section 1226(a) applies to applicants for admission, like Hurtado, who are not actively seeking admission but who have been residing in the United States for an extended period. *Cantu-Cortes,* 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Hurtado was also apprehended and detained pursuant to an I-200 warrant for arrest of an alien, in accordance with the procedures of § 1226(a). (Doc. 4-3, at 3); *Compare* 8 U.S.C. § 1226 ("On a warrant issued by the Attorney General, an alien may be arrested and detained

10

pending a decision on whether the alien is to be removed from the United States."), *with* 8 U.S.C. § 1225 (containing no provisions on apprehending noncitizens via warrant). Accordingly, Hurtado was improperly detained under § 1225(b), when he should have been detained under § 1226(a).

B. HURTADO'S DUE PROCESS RIGHTS WERE VIOLATED WHEN HOOVER IMPROPERLY SUBJECTED HIM TO MANDATORY DETENTION.

Hoover's continued mandatory detention of Hurtado under § 1225(b)(2)(A) violates Hurtado's procedural due process rights. Hurtado avers that Hoover's mandatory detention of Hurtado constitutes due process violations. (Doc. 1, at 19-20). Hoover contends that as an immigration detainee, Hurtado has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 4, at 41-42).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Hurtado's favor because Hoover has deprived Hurtado of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542

11

U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Hurtado's favor because Hurtado remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Hurtado's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at *8. Here, Hurtado poses no such risk to the government's interest in detaining him. Hoover does not allege that Hurtado poses a flight risk or danger to the community. (*See* Doc. 4). Further, Hurtado has no criminal history and has established substantial ties to his community, while complying with all the requirements of his immigration proceedings and conditions of release. (Doc. 1, at 9, 16-18). As each *Mathews* factor weighs in Hurtado's favor, his mandatory detention under § 1225(b) violates his procedural due process rights. Accordingly, Hurtado's

12

petition for writ of habeas corpus is **GRANTED**, and Hoover is **ORDERED** to release Hurtado from custody.[3]

## V.    CONCLUSION

For the foregoing reasons, Hurtado's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Hoover is **ORDERED** to release Hurtado from custody. Hoover is also permanently enjoined from re-detaining Hurtado under § 1225(b). Hurtado may move to reopen this matter if Hoover seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 27, 2026**                    /s/ Karoline Mehalchick
                              **KAROLINE MEHALCHICK**
                              **United States District Judge**

---

[3] The Court notes that Hurtado also seeks relief in the form of attorney's fees and costs under the Equal Access to Justice Act. (Doc. 1, at 23). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Hurtado must request attorney's fees in a separate motion with accompanying exhibits.